UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH WALTON,<br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF CARMEL, MAYOR JAMES<br>BRAINARD, DOUGLAS HANNEY,<br>CLAYBRIDGE HOMEOWNERS<br>ASSOCIATION, INC., ELIZABETH I. VAN<br>TASSEL, RICHARD SCOTT, E. DAVIS<br>COOTS and ROBERT FOLEY, in their<br>individual capacities,<br>　　　　Defendants. | )<br>)<br>)<br>)　　1:05-cv-902- RLY-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. Introduction.**

　　　　Plaintiff Deborah Walton's property located at 12878 Mayfair Lane, Carmel, IN ("Lot 107") has been the subject of years of litigation between Plaintiff and Defendant Claybridge Homeowners Assoc, Inc. ("CHA"). The latest claim pertaining to this property—filed by Plaintiff against CHA, the City of Carmel, and several individuals—asserts numerous theories for relief. The core of Plaintiff's case, however, is that the Defendants allegedly violated Plaintiff's Fifth and Fourteenth Amendment rights by depriving her of due process in the taking of her property.[1] Cross-motions for summary judgment now pend, which the Court addresses

---

[1] Plaintiff more specifically argues that Defendants deprived her not of property but of a property right [Docket No. 154 at 17-18; Docket No. 153 at 21-24], but this distinction is inconsequential. *See, e.g., Lynce v. Mathis*, 519 U.S. 433, 440 n.12 ("The Fifth Amendment's Taking Clause prevents . . . government actors from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation.'").

below.

## II. Background.

Plaintiff considers an entryway wall located on Lot 107 to be a visual impairment. [Docket No. 82 at 36 (Ex. G at 1).] Plaintiff, through her attorney, requested that Carmel inspect the wall and inform Plaintiff of any violations. [Docket No. 153 at 1.] On April 5, 2004, Adrienne Keeling of Carmel's Division of Planning & Zoning informed Plaintiff that no permit had been issued for the wall and would not be issued until Plaintiff rectified another issue: the encroachment of the wall upon the Mayfair Lane right-of-way. [Docket No. 82-1 at 34 (Ex. F at 2).] In her letter, Keeling indicated that "encroachment into the right-of-way can be resolved either by removal of the encroachment or obtaining Consent to Encroach from the Carmel Board of Public Works & Safety." [*Id.*]

On June 2, 2004, Plaintiff's counsel Peter Kovacs[2] sent a letter to CHA's attorneys Elizabeth Van Tassel and Matthew Hinkle strongly suggesting that the portion of the wall encroaching onto the right-of-way be immediately removed so that Plaintiff would not be cited for a violation. [Docket No. 147-3 at 7-9 (Ex. 2).] Van Tassel responded by suggesting that instead of removing the wall, CHA should apply for a consent to encroach as suggested by Carmel. [Docket No. 147-3 at 11 (Ex. 2).] On June 23, 2004, Kovacs wrote to Van Tassel following a telephone conversation between the two: "To summarize, you provided an update on your efforts to assemble information so that the necessary applications could be made." [Docket No. 147-3 at 13 (Ex. 2).] On June 29, 2004, Kovacs again wrote to Van Tassel reminding her of an upcoming deadline given by Carmel to rectify the issue of the encroaching wall. [Docket No.

---

[2] Plaintiff is presently pro se, but she has had several attorneys represent her in connection with this litigation.

147-3 at 14 (Ex. 2).] On August 5, 2004, Kovacs sent a letter to CHA's attorney, E. Davis Coots, reminding him that his office had indicated that it "would be submitting an application to the City of Carmel" and that "this application would be filed shortly." [Docket No. 147-11 at 14 (Ex. 9).]

On August 10, 2004, Coots wrote a letter on behalf of CHA to Mike McBride of Carmel requesting that "the matter be placed on the Board of Works agenda to grant an encroachment of the wall onto the City's street right of way." [Docket No. 82-1 at 38 (Ex. H at 1).] Several days later Dick Hill of Carmel responded to Coots by letter indicating that he was planning to prepare a consent to encroach agreement and requesting the information he needed from CHA to do so. [Docket No. 82-1 at 45-46 (Ex. I at 1-2).] On September 9, 2004, Coots provided Carmel with the requested information. [Docket No. 82-1 at 39-41 (Ex. H at 2-4).]

In early September, Walton met with Dick Hill and informed him that Lot 107 belonged to her and she would not apply for an encroachment agreement. [Docket No. 82-1 at 6 (Ex. A at 1).] Later that month Hill sent CHA's attorney Coots a letter indicating that Carmel was not comfortable including within the consent to encroach a legal description of Lots 106 or 107, and thus requested a legal description of the segment of the right-of-way upon which the wall encroaches. [Docket No. 1, Ex. F.]

On October 25, 2004, Walton's attorney Michael Moore wrote a letter to Carmel's mayor, James Brainard, informing him that CHA was not the owner of 12878 Mayfair Lane, and therefore CHA had no authority to make the request to encroach. [Docket No. 82-1 at 57 (Ex. K).] Nonetheless, CHA and Carmel drafted the encroachment. The final version of the consent to encroach agreement entered between CHA and Carmel depicts CHA as "Owner" of

an easement on Lots 106 and 107. [Docket No. 82-1 at 59 (Ex. L at 1).] The agreement also says, "Owner has constructed an entry wall . . . portions of which encroach into the Right of Way of Mayfair Lane," implying ownership not only of the easement but also of the wall. [Docket No. 82-1 at 59 (Ex. L at 1).] The agreement gives a legal description of the right-of-way and provides maps showing where the wall encroaches. In a meeting held on June 1, 2005, Mayor Brainard and board member Mary Ann Burke voted 2-0 in favor of CHA's request to encroach. [Docket No. 82-4 at 27 (Ex. U at 2).] On June 16, 2005, Plaintiff filed this action against Defendants.

## III. Discussion.[3]

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, arguing that Defendants deprived her of the right to enjoy her property in violation of the Fifth and Fourteenth Amendments under color of law when they signed the consent to encroach agreement. [Document No. 81 at 10, 15; Docket No. 91 at 10, 16.] Plaintiff argues that she owns the land to which the agreement pertains, two city officials testified that only the property owner has the right to petition for an encroachment, and that she has not consented to the petition. [Docket No. 81 at 11-13; Docket No. 91 at 12-15.] Thus, she argues Carmel gave CHA rights to her property without her consent.

---

[3] As noted, this cause is before the Court on cross-motions for summary judgment. Summary judgment is appropriate when no genuine issue of material fact is in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). "When the nonmoving party bears the burden of proof at trial, the nonmoving party must come forward with specific facts demonstrating an issue for trial to survive summary judgment." *Jenkins*, 487 F.3d at 492 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To survive summary judgment these facts must be material—they must govern the outcome of the lawsuit, and these facts must be in dispute—"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Plaintiff further argues that Douglas Hanney, counsel for Carmel, had direct knowledge that Plaintiff was the property owner, but nonetheless signed the consent to encroach, demonstrating his malice toward Plaintiff.[4] [Docket No. 81 at 14.] In response to Defendants' argument that Plaintiff does not own the right-of-way on which the wall encroaches, Plaintiff cites several cases supporting her position that her property runs to the center of the adjoining street encompassing the property on which the encroachment is located. [Docket No. 82-1 at 15 (Ex. C at 4); Docket No. 81 at 11.] Plaintiff argues that even if her property does not extend to the center of the adjoining road, the wall for which Defendants sought an encroachment "extended outside the easement area" so "the City of Carmel had to bend some rules" to approve the encroachment.[5] [Docket No. 81 at 12.] She argues that CHA "was allowed to erect

---

[4] Plaintiff similarly contends that Mayor Brainard was conspiring with members from CHA to force Plaintiff out of the neighborhood. In support of this accusation, Plaintiff references several emails exchanged between Mayor Brainard and CHA members. [Docket No. 92, Ex. 6.]

[5] Plaintiff also quotes a statement made by Hamilton County Superior Court Judge William Hughes in open court to support of her assertion that CHA's easement did not extend beyond the boundary of the lot:

> [The reason] I don't think that a State court Judge can do that is it could be argued that it is an inappropriate taking of property without compensation and I'm not going to be involved in that which means the only authority that I can give in Ms. Walton's request which I intend to give her is as to the orange and yellow spots.

[Docket No. 81 at 11; Docket No. 82-1 at 15 (Ex. C at 4).] Just prior to this statement, Judge Hughes determined that a prior judge's determination that the easement extended from the edge of the street in about thirty feet was too broad and did not accurately describe the easement, which was limited to specific areas that he indicated on a map. [Docket No. 82-1 at 14-15 (Ex. C at 92-93).] However, whether CHA has an easement for the wall on the right-of-way is irrelevant to whether Carmel consents to allow CHA to encroach on the right-of-way.

a structure on Private Property without a Permit" in violation of Carmel's zoning ordinance, and therefore the consent to encroach "without the Property Owner's signature" is a "violation of [Plaintiff's] Constitutional Rights."[6] [Docket No. 154 at 12.]

The CHA and Carmel Defendants argue that Plaintiff cannot establish an unconstitutional taking because she did not own any of the property involved in the consent to encroach agreement.[7] [Docket No. 146 at 14; Docket No. 144 at 15.] They maintain that CHA owns a wall that sits on a portion of Plaintiff's property for which they own an easement, and it also sits on Carmel's right-of-way, and that Carmel "gave up only what it had a right to give up—its right to object to the encroachment." [Docket No. 144 at 16; *accord* Docket No. 146 at 15.] The Defendants also argue that Plaintiff has no interest in the property for which the consent to encroach agreement was made, and therefore Plaintiff cannot have suffered an unconstitutional taking. [Docket No. 146 at 14; Docket No. 144 at 15.]

Plaintiff counters that she is not claiming that her property was taken, but rather that a property right was taken—the right to consent to the encroachment agreement, which Plaintiff believes is her due process right. [Docket No. 154 at 17-18; Docket No. 153 at 20-24.] Thus, Plaintiff maintains, Defendants "interfered with [her] property rights" by signing the consent to encroach, in violation of her right to due process under the Fifth and Fourteenth Amendments. [Docket No. 154 at 17.]

---

[6] The record indicates that the entryway wall on Lot 107 was erected prior to Plaintiff's acquisition of the lot. [Docket No. 147-6 at 6 (Ex. 5).]

[7] In the alternative, Defendants argue that Plaintiff's claims are barred because she has failed to exhaust state court remedies. [Docket No. 146 at 21-22; Docket No. 144 at 18-19.] The Court need not address this issue based upon the conclusion that Plaintiff has no property interest in the relevant property (CHA's wall and Carmel's right-of-way interest), and thus there can be no taking.

If the consent to encroach agreement did not constitute a taking of any of Plaintiff's property rights without due process by Carmel and CHA, then Plaintiff's § 1983 claim fails. The Fifth Amendment provides that no person shall "be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005) (citing *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897). Notably, the "'substantive' component of the Due Process Clause does not 'requir[e] the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755 (2005) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989)).

Plaintiff does not contest that CHA owns the wall in question; Plaintiff only contests the scope and purpose of the wall. [Docket No. 154 at. 8, ¶ 9.][8] Plaintiff also does not contest that Carmel has an interest in the right-of way beyond the exterior boundaries of Lot 107; she simply argues that Carmel does not have a fee simple interest in the right-of-way. [Docket No. 154 at 8, ¶ 10.][9] The consent to encroach agreement between Carmel and CHA clearly only deals with uncontested interests: CHA's wall and Carmel's right-of-way interest. [*See* Docket No. 82-1 at 59-68 (Ex. L).] Nowhere in the agreement do any of the parties to it claim to own

---

[8] Plaintiff's dispute with the proposition that the wall "is the property of [CHA] and is in keeping with the use, scope and purpose of [CHA's] easements situated on Lot 107," is that the wall "is a violation of Carmel Ordinances and is a Hazard." [Docket No. 154 at 8, ¶ 9.]

[9] Plaintiff's dispute with the proposition that "[t]he remaining part of the Wall extends beyond the exterior boundaries of Lot 107 onto a right-of-way owned by the City of Carmel," is that "Carmel does not have fee simple to the portion of land in the Right-of-Way." [Docket No. 154 at 8, ¶ 10.]

Lot 107 in fee simple, regardless of whether Lot 107 extends to the center of the road. [*Id.*] The agreement says that CHA is the "Owner" and that "Owner owns an easement . . . located in the Springmill Streams . . . and Claybridge at Springmill subdivisions . . . Lots 106 and 107" and that "Owner has constructed an entry wall . . . portions of which encroach into the Right of Way of Mayfair Lane at its intersection with Brighton Avenue." [Docket No. 82-1 at 59 (Ex. L at 1).] The agreement also says that "the Right of Way is beneficial to City and its residents." [Docket No. 82-1 at 60 (Ex. L at 2).]

Thus, the effect of the consent to encroach is that Carmel consents to CHA's wall encroaching on whatever property interest it has in the right-of-way in the manner described by the agreement. Plaintiff seems to be arguing that Carmel is required to protect whatever interest she has in the right-of-way by not giving up its rights without her consent, and if Carmel fails to do so, then she is deprived of due process under the Fifth and Fourteenth Amendments. Because the Constitution does not impose this requirement on Carmel, Plaintiff's due process claim fails. Furthermore, the record supports the conclusion that Plaintiff has no property interest at all in the right-of-way beyond her property.[10] Even if she did, the agreement between

---

[10] The CHA Defendants provide several bases in support of the fact that Plaintiff does not own the property for which the consent to encroach agreement was made. First, Dennis Singer, a registered land surveyor, provided an affidavit stating that "the dark solid line shown on the Surveyor's Report [prepared by Cripe Surveyors] accurately depicts the outer boundary of Lot 107." [Docket No. 147, Ex. 7 at 2; Docket No. 146 at 15.] Attached to the affidavit is a map of Lot 107, showing a dark solid line, indicating the perimeter to which Singer referred in the affidavit. [Docket No. 147-8 at 7 (Ex. 7 at Plaintiff's Ex. 12).] Outside this dark solid line is the area for which the CHA Defendants sought and received the consent to encroach, as indicated by the legal description and the map attached to the approved consent to encroach. [Docket No. 140-7 at 6-10 (Ex. 6).] Plaintiff's attempt to dispute Singer's survey of Lot 107 based on a legal theory rejected by the state court (described below) is unavailing. [Docket No. 154 at 18-21.]

The CHA Defendants also offer the Hamilton County Superior Court decision handed down on December 4, 2006, which specifically found that "the portion of the wall at issue which is not within the entryway easement is within the right-of-way and not within the boundaries of

CHA and Carmel does not interfere in any way with any interest she claims in the right-of-way. The undisputed facts demonstrate that the Court should grant Defendants' motions for summary judgment as to Plaintiff's Fifth and Fourteenth Amendment claims and deny Plaintiff's motions for summary judgment.

In addition to her § 1983 claim, Plaintiff also alleges fraud by Mayor Brainard and Richard Scott. [Docket No. 1 at 4.] The Court has jurisdiction over these state law claims based on 28 U.S.C. § 1367. Nevertheless, because dismissal of Plaintiff's federal claims is appropriate, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state

---

the lot owned by Walton." [Docket No. 147, Ex. 8 at 10; Docket No. 146 at 15.] The CHA Defendants contend that this issue has preclusive effect because the party against whom it is being asserted (Plaintiff) had a full and fair opportunity to litigate the issue of whether she owned to the middle of the street, which she argued as part of her trespass claim. [Docket No. 146 at 18.] Indeed the Hamilton County Superior Court found that Plaintiff could not prove that her property line abutted the streets in question, which the court said was a crucial fact required by the cases proposing that property ownership runs to the center of the adjoining street. [Docket No. 147, Ex. 8 at 33-34; Docket No. 146 at 18.] The state court explained that the evidence presented by both parties indicated that "the boundary-lines for Walton's fee title clearly show that the realty Walton purchased stops at the right-of way," and the court could "only conclude that Walton bought what she bought—and no more—and that she therefore does not have exclusive possessory rights in the right-of-way that immediately adjoins either the northern or the eastern side of Lot 107." [Docket No. 147, Ex. 8 at 33-34.] Plaintiff cites and explains several Indiana cases standing for the proposition that by law her lot extends to the center of the street. [Docket No. 154 at 18-21 (discussing or citing *Swaim v. City of Indianapolis*, 202 Ind. 233, 171 N.E. 871 (1930); *Decker v. Evansville Suburban & N. Ry. Co.*, 133 Ind. 493, 33 N.E. 349, 350 (1893); *Town of Freedom v. Norris*, 128 Ind. 377, 27 N.E. 869, 870 (1891); *Gyr v. Hagemann*, 130 Ind. App. 212, 163 N.E.2d 620, 624 (1960); *Woolverton v. Miller*, 83 Ind. App. 574, 148 N.E. 621 (1925)).]
    This legal argument is irrelevant. The consent to encroach agreement does not affect any interest Plaintiff might plausibly have and thus cannot be considered a taking. Moreover, Plaintiff is essentially asking this Court to review the legal conclusion reached by the Hamilton County Superior Court, which this Court will not do. Similarly, Plaintiff's request that this Court certify the question to the Supreme Court of Indiana per Indiana Appellate Rule 64 [Docket No. 156] is not well taken.

law claims, which should be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3); *Stone v. INS*, 514 U.S. 386, 411 (1995).

### III.  Conclusion.

For the reasons set forth, the Magistrate Judge recommends: (1) Defendants' motions for summary judgment [Docket Nos. 136, 148] be granted as to Plaintiff's Fifth and Fourteenth Amendment claims, and final judgment be entered in favor of Defendants and against Plaintiff as to these claims; (2) Plaintiff's motions for summary judgment [Docket Nos. 80, 93] be denied; (3) Plaintiff's motion to certify question to the Indiana Supreme Court [Docket No. 156] be denied; and (4) Plaintiff's remaining state law claims be dismissed without prejudice.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  09/11/2007

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Audrey Louise Smith
HUME SMITH GEDDES GREEN & SIMMONS
asmith@humesmith.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Wayne E. Uhl
STEPHENSON MOROW & SEMLER
wuhl@stephlaw.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com

DEBORAH WALTON
12878 Mayfair Lane
Carmel, IN 46032